UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.                                           No. CR 07-748 MCA

**TRAVIS DALLY** and
**JEREMIAH LOONEY,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendant Looney and Dally's Motion and Memorandum for Discovery and Bill of Particulars Concerning RICO Allegations and Request for Hearing* [Doc. 342] filed on August 29, 2008. Having considered the parties' submissions, the relevant law, and being fully advised in the premises, the Court denies the motion for the reasons set forth below.

In their motion, Defendants Looney and Dally request a bill of particulars, as well as additional discovery, pertaining to "the Racketeer Influenced and Corrupt Organization (RICO) allegations contained within the Superseding Indictment." [Doc. 342.] Defendant Wasson filed a similar motion challenging the sufficiency of the indictment [Doc. 327], but he has since changed his plea, and the Court finds no indication in the record that the other remaining Defendants joined in his motion. In addition, the Court previously dismissed the charges against Defendant Raymond without prejudice. Accordingly, the Court's analysis is limited to the remaining charges against Defendants Looney and Dally.

The denial of a motion for a bill of particulars does not provide grounds for reversal on appeal unless a defendant shows that he was "'actually surprised at trial and thereby incurred prejudice to his substantial rights'" because the indictment did not sufficiently spell out the theory of the government's case. United States v. Ivy, 83 F.3d 1266,1281 (10th Cir. 1996) (quoting United States v. Levine, 983 F.2d 165, 166-67 (10th Cir. 1992)). Thus, no bill of particulars is necessary when the indictment adequately states the elements of the offenses charged therein, and the Government has provided enough information about its theory of the case, either in the indictment or in other documents or discovery materials, so that the charges are defined with "sufficient precision" to allow a defendant "to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Dunn, 841 F.2d 1026, 1029 (10th Cir. 1988); see United States v. Higgins, 2 F.3d 1094, 1096-97 (10th Cir. 1993) (noting circumstances in which the Government's disclosure of other documents or discovery materials may cure a lack of specificity in an indictment); United States v. Cuong Gia Le, 310 F. Supp. 2d 763, 772-73 (E.D. Va. 2004) (applying the above principles to an indictment alleging racketeering offenses).

On the other hand, "[i]f an indictment or information does not state all of the essential elements, it cannot be cured by a bill of particulars that alleges facts establishing the missing element.  The bill may offset a lack of factual specificity, but it will not save an indictment so vague that it fails completely to charge an offense." United States v. Mobile Materials, Inc., 871 F.2d 902, 908 n.4 (10th Cir. 1989); accord Cuong Gia Le, 310 F. Supp. 2d at 773.

Similarly, a bill of particulars does not cure a failure to meet the Government's discovery obligations, because it is not a discovery device aimed at disclosing specific evidence in support of the charges contained in an indictment.  See Dunn, 841 F.2d at 1029.

In order to make an informed ruling on a motion for a bill of particulars, the Court must first identify the essential elements of the relevant offenses charged in the *Superseding Indictment* in this case.  If each of these elements is spelled out with sufficient precision in the *Superseding Indictment*, then there is no need for a bill of particulars.

Contrary to what is suggested in the motion filed by Defendants Looney and Dally [Doc. 342], the Superseding Indictment in this case does not contain any stand-alone racketeering charges under the RICO statute, 18 U.S.C. § 1962.  Rather, the racketeering charges in the Superseding Indictment arise under the "violent crimes in aid of racketeering activity" (VCAR) statute, 18 U.S.C. § 1959(a).  "Congress enacted § 1959 to complement the [RICO] Act . . . by making it a federal crime to commit violent acts for the purpose of maintaining or increasing one's position within a RICO enterprise."  United States v. Crenshaw, 359 F.3d 977, 984 (8th Cir. 2004); accord United States v. Mapp, 170 F.3d 328, 335 (2d Cir. 1999).

The VCAR statute covers two different purposes for which violent crimes may be committed in aid of racketeering: (1) "murder for hire" or "quid pro quo" crimes, in which a defendant received something of pecuniary value from the racketeering enterprise in exchange for carrying out the underlying offense, and (2) "status crimes," in which a defendant commits a violent crime in order to maintain or increase his or her position within

a criminal organization.  See 18 U.S.C. § 1959(a); United States v. Fernandez, 388 F.3d 1199, 1232 (9th Cir. 2004).  The *Superseding Indictment* in this case alleges both of these purposes in the conjunctive, although at trial the Government may seek a conviction on either ground.

Based on the record developed thus far, it appears that the Government is going to proceed on a theory that the murder and kidnapping of Mr. George, as well as the attempted murder of the other alleged victim, were "status crimes" committed for the purpose of maintaining or increasing the Defendants' positions within a particular faction of the Aryan Brotherhood.  To the extent there remains any ambiguity on this point, however, the Court will require the Government to clarify in a written notice whether it is going to proceed to trial on the "status crime" theory exclusively or also present a theory that the violent crimes alleged in the *Superseding Indictment* were committed for pecuniary gain.  Clarifying this point is a simple matter that can be accomplished without requiring an extensive bill of particulars.  See Higgins, 2 F.3d at 1096-97.

Assuming the Government's theory of the case is that the kidnapping, murder, and attempted murder alleged in the *Superseding Indictment* were "status crimes," then to obtain convictions under the VCAR statute, the Government must prove the following elements at trial as to each Defendant:  (1) the defendant committed the violent crime(s) of murder, kidnapping, attempted murder, and/or conspiracy; (2) there was a criminal organization, *i.e.*, the Aryan Brotherhood, that meets the statutory definition of an "enterprise," (3) the enterprise was engaged in or its activities affected interstate or foreign commerce, (4) the

Aryan Brotherhood was engaged in racketeering activity during the time period in question, (5) the Defendant had or sought a position in the Aryan Brotherhood, and (6) the Defendant's general purpose in committing the violent crime at issue was to gain entrance to, or to maintain or increase his position in, the Aryan Brotherhood. See United States v. Smith, 413 F.3d 1253, 1277 (10th Cir. 2005); Fernandez, 388 F.3d at 1219-20; Crenshaw, 359 F.3d at 991.

The first of these elements under the VCAR statute incorporates the essential elements of the underlying violent crime at issue, which are typically borrowed from state law. See United States v. Pimentel, 346 F.3d 285, 302 (2d Cir. 2003). In the present case, the *Superseding Indictment* cites the relevant New Mexico statutes in support of the underlying crimes of conspiracy, see N.M. Stat. Ann. § 30-28-2; murder and accessory to murder, see N.M. Stat. Ann. §§ 30-2-1, 30-1-13; kidnapping and accessory to kidnapping, see N.M. Stat. Ann. §§ 30-4-1, 30-1-13; and attempted murder, see N.M. Stat. Ann. §§ 30-2-1, 30-28-1. New Mexico's Uniform Jury Instructions further define the essential elements of each of the underlying violent crimes charged in the *Superseding Indictment*. See NMUJI 14-201 (willful and deliberate murder); NMUJI 14-403 (kidnapping); NMUJI 14-2801 (attempt to commit a felony); NMUJI 14-2810 through 14-2816 (conspiracy); NMUJI 14-2820 through 14-2823 (aiding and abetting).

Although these statutes and jury instructions provide various alternative theories of murder (*e.g.*, felony murder or depraved-mind murder) and kidnapping (*e.g.*, for ransom or for holding a hostage), it seems clear from the other allegations in the *Superseding*

*Indictment* that the Government is proceeding on a theory that the murder of Mr. George and the attempted murder of the other alleged victim were a "willful, deliberate, and premeditated" effort under N.M. Stat. Ann. § 30-2-1(A)(1), and that the kidnapping of Mr. George was committed with the intent "to inflict death [or] physical injury . . . upon the victim" under N.M. Stat. Ann. § 30-4-1(A)(4). Again, to the extent there is any need for clarification on this point, that need can be fulfilled by requiring the Government to provide written notice of which provisions of the murder and kidnapping statutes it is going to invoke as a basis for conviction at trial.

The Court further notes that the provisions in the *Superseding Indictment* [Doc. 36, ¶ 26] which set forth the grand jury's special finding that "the offense was committed after substantial planning and premeditation" pertains only to the murder of Mr. George alleged in Count 2 of the *Superseding Indictment*, and is provided for the purpose of satisfying the requirements of the federal death-penalty statute, 18 U.S.C. § 3592(c)(9). Such special findings are no longer at issue in light of the Government's subsequent notice that it is not seeking the death penalty in this case. [Doc. 266.] Accordingly, the notice of special findings contained in the *Superseding Indictment* is mere surplusage at this point.[1] Cf. Fernandez, 388 F.3d at 1220 (noting that allegations in an indictment that are not necessary to establish a violation of the statute are surplusage and need not be proven at trial). To the extent that the Defendants seek additional information concerning the *mens rea* requirement

---

[1] If an appropriate motion is filed, the Court will consider striking the special findings from the *Superseding Indictment* so as to avoid unfair prejudice or confusion when the charges are read to the jury at trial.

of New Mexico's murder statute (*i.e.*, "willful, deliberate, and premeditated"), the Court finds that the Government has already provided the answers in its omnibus response brief and through discovery, as explained in further detail below.

With respect to the conspiracy charges, the Defendants' questions about the purpose of the alleged conspiracies and any consideration they received in relation to them would be answered by clarifying that the Government is proceeding under a "status crime" theory (in which the conspiracy would be entered into for the purpose of maintaining or increasing the Defendant's position in the Aryan Brotherhood) rather than a "murder for hire" theory (in which the conspiracy would be entered into for pecuniary gain). Questions about the manner and means, or acts in furtherance of, the alleged conspiracy have been answered in the Government's omnibus response brief and discovery materials, which set forth the theory that the Defendants Wasson, Raymond, and Dally came to an agreement to kidnap and murder Mr. George in response to learning that Mr. George had filed a police report regarding the threats he received from Mr. Robinson as a result of Mr. George's alleged relationship with Mr. Robinson's estranged spouse. According to that theory, Mr. George's police report rendered him a "snitch" subject to retaliation under the Aryan Brotherhood's "constitution," and Defendants Wasson, Raymond, and Dally entered into an agreement to enforce such rules in order to maintain or increase their positions within the Aryan Brotherhood.

If the Government can prove that the Defendants entered into an agreement to retaliate against Mr. George by kidnapping and murdering him for this purpose, then the underlying

conspiracy crimes were complete at that point, and there is no need for further clarification as to what the Defendants next did to accomplish the goals of the conspiracy. The VCAR statute can incorporate state law with regard to conspiracy offenses, see Cuong Gia Le, 310 F. Supp. 2d at 783, and unlike some federal statutes, New Mexico law does not require an "overt act" to complete a conspiracy offense. Compare State v. Johnson, 2004-NMSC-029, ¶ 49, 136 N.M. 348, 98 P.3d 998 (holding that there is no "overt act" requirement in N.M. Stat. Ann. § 30-28-2) with United States v. McKinney, 954 F.2d 471, 474 (7th Cir. 1992) (noting that there is such an "overt act" requirement in one of the federal conspiracy statutes, 18 U.S.C. § 1117). New Mexico's "crime [of conspiracy] is complete when the felonious agreement is reached," and "[s]uch an agreement need not be proven by direct evidence; the agreement may be in the form of a mutually implied understanding and may be inferred from circumstantial evidence." Johnson, 2004-NMSC-029, ¶ 49. Thus, it is not necessary for the *Superseding Indictment* to state any overt acts committed by a particular Defendant in furtherance of the alleged conspiracies.

I next turn from the elements of the underlying violent crimes under state law to the so-called "RICO elements" of the federal VCAR statute on which the Defendants seek further clarification and disclosures in their motion. First among these RICO elements is the requirement of showing that the Aryan Brotherhood was an enterprise during the time period alleged in the *Superseding Indictment*. The VCAR's statutory definition of "enterprise" includes "any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18

U.S.C. § 1959(b)(2).  This language in the VCAR statute parallels the definition of "enterprise" in the RICO statute, 18 U.S.C. § 1961(4), except that it adds an "interstate nexus" requirement.  See United States v. Riddle, 249 F.3d 529, 538 (6th Cir. 2001). "Therefore, cases decided under § 1961(4) may also be used to determine what constitutes an enterprise under § 1959," United States v. Phillips, 239 F.3d 829, 843 (7th Cir. 2001), provided that the "interstate nexus" requirement for the enterprise is also satisfied.

An "enterprise" under the RICO statute "'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" Smith, 413 F.3d at 1266 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).  Specifically, the Government must prove the following three elements of a RICO enterprise: (1) that there existed "'an ongoing organization with a decision-making framework or mechanism for controlling the group,'" (2) "'that various associates function as a continuing unit'" during their membership or association with the organization,  and (3) that the enterprise "has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses." Id. at 1266-67 (quoting United States v. Sanders, 928 F.2d 940, 943 (10th Cir. 1991); cf. United States v. Nascimento, 491 F.3d 25, 32 (1st Cir. 2007) (further defining a RICO enterprise under 18 U.S.C. § 1962).

Defendants contend that the *Superseding Indictment* simply borrows some standard boilerplate language from another case in order to set forth the Government's theory that the Aryan Brotherhood is an "enterprise" under the RICO statute.  According to Defendants' reply brief, such boilerplate language is inadequate in this context because it suggests that

the "Aryan Brotherhood" is a single, permanent, and monotholic enterprise rather than a mere assortment of factions which are in conflict with one another at different times and have nothing in common except for the name the Government attributes to them. [Doc. 395.] In this regard, Defendants point to evidence from the recent trial in the Thompson case suggesting that two or more factions of the Aryan Brotherhood in Texas were competing to form a branch of their organization in New Mexico. They also suggest that the enterprise at issue in Thompson or other Aryan Brotherhood cases existed at a different time period than the dates alleged in this case. Finally, they point to the fact that the violent crimes alleged in the *Superseding Indictment* were directed against members or associates of the same organization, rather than rival gangs or other ethnic groups.

Other courts faced with similar fact patterns have concluded that a criminal organization may constitute a RICO "enterprise" notwithstanding the existence of competing factions or conflicts among members within a larger group which result in changes in membership or status within the organization over the course of time. See Fernandez, 388 F.3d at 1222-23 (collecting cases). "The existence of an internal dispute does not signal the end of an enterprise, particularly if the objective of, and reason for, the dispute is control of the enterprise." United States v. Oruna, 32 F.3d 704, 710 (2d Cir. 1994). Thus, in the present case, the *Superseding Indictment* adequately pleads the "enterprise" element of the VCAR statute even though it also alleges that the Defendants engaged in violent acts against other members or associates of the Aryan Brotherhood (*i.e.*, Mr. George), and even though there may be evidence that other factions of the Aryan Brotherhood were competing for

leadership of its New Mexico branches at the time the crimes at issue were committed or that the leadership changed at some other time.

As noted above, the VCAR statute appends an "interstate nexus" requirement to the "enterprise" element. Other courts have opined that this "interstate nexus" element satisfies the constitutional requirement of placing the VCAR statute within the bounds of congressional authority to regulate interstate commerce under the Commerce Clause. See, e.g., Crenshaw, 359 F.3d at 984-87.

The statute's "interstate nexus" requirement is satisfied by establishing "a connection between the § 1959 act of violence and a RICO enterprise which has a *de minimis* interstate commerce connection." Riddle, 249 F.3d at 538; accord Fernandez, 388 F.3d at 1220. The interstate-nexus requirement applies to the activities of the enterprise as a whole; there is no requirement that the violent crimes in aid of that enterprise have their own specific connection to interstate or foreign commerce apart from the enterprise. See Crenshaw, 359 F.3d at 984. Further, the indictment "need not set forth facts alleging how interstate commerce was affected, nor otherwise state any theory of interstate impact." Fernandez, 388 F.3d at 1218.

The *Superseding Indictment* in the present case alleges the necessary connection between the violent crimes and the enterprise because it charges that those crimes were committed for the purpose of enforcing the enterprise's rules against "snitching" and thereby maintaining or increasing the Defendants' positions within the enterprise. The Government also presents a theory connecting the enterprise at issue here to interstate commerce insofar

as the *Superseding Indictment* alleges that two or more factions of the Aryan Brotherhood of Texas were attempting to establish a branch of the organization in New Mexico, and various items used by the enterprise in carrying out its activities (such as messages, firearms, and a shovel) necessarily were transported in interstate commerce or purchased from a business with interstate operations. See Nascimento, 491 F.3d at 45. It is also possible that the Government may present evidence that the enterprise was engaged in crimes of a primarily economic nature, such as attempting fraudulent transactions through the use of forged checks and stolen identity papers; the interstate nexus for such economic crimes should be readily apparent from the *Superseding Indictment* and the discovery provided in this case.

The next element of the VCAR statute requires some evidence that the "enterprise" as defined above was engaged in "racketeering activity." The VCAR statute borrows the definition of "racketeering activity" from Section 1961(1) of the RICO statute. See 18 U.S.C. § 1959(b)(1) (citing 18 U.S.C. § 1961); Pimentel, 346 F.3d at 296. The RICO statute, in turn, contains an extensive listing of specific crimes that constitute "racketeering activity," which includes, among other things, "fraud and related activity in connection with identification documents" under 18 U.S.C. § 1028, bank fraud under 18 U.S.C. § 1344, "obstruction of state or local law enforcement" under 18 U.S.C. § 1511, "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance (as defined in Section 102 of the Controlled Substances Act), punishable under any law of the United States," and "any act or threat involving murder,

kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under state law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1).

Although the law is not entirely settled in applying this terminology from the RICO statute in the context of the VCAR statute, the principles developed in interpreting the former statute support the conclusion that the enterprise's predicate acts of racketeering activity must be distinct from the particular violent crimes which form the basis for the VCAR offense. In other words, the Government cannot use the exact same offense to satisfy both the "violent crime" requirement of the VCAR statute and the definition of "racketeering activity" borrowed from the RICO statute. Otherwise, the statute would allow an absurd result in which the Government could obtain a conviction by proving that a defendant committed a violent crime "in aid of" that same crime. The more logical reading of the statute is that "every alleged § 1959 offense is in essence composed of two parts: (i) the violent crime in aid of racketeering and (ii) the predicate racketeering activity." Cuong Gia Le, 310 F. Supp. 2d at 777 n.17.

Apart from the murder, kidnapping, and attempted murder that constitute the "violent crimes" at issue here, Paragraph 1 of the *Superseding Indictment* alleges that the enterprise, *i.e.*, the Aryan Brotherhood, "engaged in other criminal activities, including . . . conspiracy to manufacture/distribute narcotics, and firearms trafficking." [Doc. 36.] Paragraph 6 states that: "Identity theft and check fraud are the most prevalent non-violent crimes committed by the Aryan Brotherhood." Paragraph 18 further identifies the enterprise's racketeering

activity to include "narcotics trafficking in violation of Title 21, U.S.C. § 841 and 846. Paragraph 16(f) of the *Superseding Indictment* alleges that "[t]o generate income, participants engage in illegal activities under the protection of the enterprise, including narcotics trafficking, fraud, trafficking in firearms, and other illegal activities."

Although certain firearms offenses are not mentioned in the RICO statute's definition of "racketeering activity," the other categories of offenses listed in the *Superseding Indictment* (*i.e.*, those relating to narcotics trafficking, identify theft, and check fraud) would appear to fit under this statutory definition and are distinct from the "violent crimes" alleged under the VCAR statute. Thus, their inclusion in the *Superseding Indictment* satisfies the basic requirement of spelling out the essential elements of the charged offenses. Cf. Cuong Gia Le, 310 F. Supp. 2d at 778 (concluding that there was no requirement that an indictment list with specificity each instance of "racketeering activity" or spell out the essential elements of each crime that is alleged to constitute such activity).

In requesting a bill of particulars and further discovery, the Defendants suggest that the bare-bones descriptions of "racketeering activity" cited above do not provide them with enough information to prepare their defenses. It is true that such bare-bones descriptions will not suffice to meet the Government's burden of proving its allegations of "racketeering activity" at trial, for in that context the Government will no longer be able to rely on summary descriptions of the organization's activities provided by a case agent who is merely transmitting hearsay from other sources. See United States v. Mejia, 545 F.3d 179, 197-99, (2d Cir. 2008). But for the present task of ruling on the Defendants' motion for a bill of

particulars, the allegations in the *Superseding Indictment* are legally sufficient for purposes of identifying the essential elements of the charged offenses.

When, as here, the indictment is legally sufficient to state the essential elements of the charged offenses, the Government is permitted to make up for a lack of factual specificity in other documents or discovery materials. See Higgins, 2 F.3d at 1096-97. And in this case, the Government has already produced numerous police reports containing more details about alleged racketeering activities.

For example, police reports indicate that the searches of the apartments performed soon after Josie Robinson reported Mr. George's disappearance revealed evidence of check fraud and identity theft. The police reports relating to the arrest of Ms. Robinson and Defendant Benjamin Raymond at the automobile dealership in Albuquerque also revealed evidence of a check fraud and identity theft scheme, as well as possible involvement with narcotics. The investigation following the arrest of Defendant Wasson revealed evidence that one or more persons in his vehicle were using a false identity and had fraudulent check-writing materials in a briefcase, as well as a firearm. Although the Government may need to present one or more fact witnesses with the requisite personal knowledge of such activities in order meet its burden of proof at trial, the combination of the *Superseding Indictment* and the discovery provided thus far will suffice to meet the concerns raised in the motions for a bill of particulars.

The last two elements of a "status crime" under the VCAR statute require the Government to prove that the Defendant (a) had or sought a position in the Aryan

Brotherhood, and (b) his general purpose in committing the violent crime at issue was to gain entrance to, or to maintain or increase his position in, the Aryan Brotherhood. See Smith, 413 F.3d at 1277. Courts generally are in agreement that the Government is not required to prove that the Defendant's "sole or principal motive" for committing the violent crime at issue was to "maintain or increase his position" in the Aryan Brotherhood. Id.; see United States v. Banks, 514 F.3d 959, 965 (9th Cir. 2008) (collecting cases).

The Ninth Circuit, however, has recently taken the position that such a status-based purpose for committing the violent crime must "be more than merely incidental. It must be within the [defendant's] 'general' purpose, or, in the alternative, the violence committed must be in some way 'integral' to the defendant's membership in the gang," such that the gang or racketeering enterprise purpose for the violent crime is a "substantial purpose" or "one of the defendant's . . . dominant purposes." Banks, 514 F.3d at 969-70.

It is not clear that courts in other circuits would place such strict limits on the purpose or motive requirement, and the Tenth Circuit's most recent pronouncement on the issue is that: "'the motive requirement is satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." Smith, 413 F.3d at 1278 (quoting United States v. Dhinsa, 243 F.3d 635, 671 (2d Cir. 2001)). According to the Second Circuit, which the Tenth Circuit has generally followed on this issue, "Section 1959 [also] reaches defendants associated with racketeering enterprises who may not be members but who participate in the organization's activities with the aspiration

of becoming members." United States v. Ferguson, 246 F.3d 129, 134 (2nd Cir. 2001).

The *Superseding Indictment* in the present case adequately pleads the last two elements of the VCAR statute by alleging that Defendants were members, associates, or prospects of the Aryan Brotherhood, and that their general purpose in committing the alleged violent crimes charged therein was to enforce that organization's rules against "snitches" and thereby gain entrance to, maintain, or increase their respective positions within the Aryan Brotherhood. For all of the above reasons, the Defendants' motion for a bill of particulars are denied, subject to the Government providing written notice to the Defendants in order to clarify whether: (1) the Government is proceeding on a "status crime" theory with respect to the VCAR offenses; (2) the Government is proceeding on a theory that the murder of Mr. George and the attempted murder of the other alleged victim were a "willful, deliberate, and premeditated" effort under N.M. Stat. Ann. § 30-2-1(A)(1); and (3) the Government is proceeding on a theory that the kidnapping of Mr. George was committed with the intent "to inflict death [or] physical injury . . . upon the victim" under N.M. Stat. Ann. § 30-4-1(A)(4).

For the foregoing reasons, the Court denies the motion for a bill of particulars and further discovery pertaining to the RICO charges.

**IT IS THEREFORE ORDERED** that *Defendant Looney and Dally's Motion and Memorandum for Discovery and Bill of Particulars Concerning RICO Allegations and Request for Hearing* [Doc. 342] is **DENIED**.

**IT IS FURTHER ORDERED** that, by no later than April 13, 2009, the Government shall provide each remaining Defendant with written notice clarifying whether: (1) the Government is proceeding on a "status crime" theory with respect to the VCAR offenses; (2) the Government is proceeding on a theory that the murder of Mr. George and the attempted murder of the other alleged victim were a "willful, deliberate, and premeditated" effort under N.M. Stat. Ann. § 30-2-1(A)(1); and (3) the Government is proceeding on a theory that the kidnapping of Mr. George was committed with the intent "to inflict death [or] physical injury . . . upon the victim" under N.M. Stat. Ann. § 30-4-1(A)(4).

**SO ORDERED** in Albuquerque, New Mexico, this 2nd day of April, 2009.

**M. CHRISTINA ARMIJO**
United States District Judge